## EARNEST NORTHINGTON *v.* THE STATE.

1. INDICTMENT. It is not necessary to allege in an indictment for bringing stolen property from another State into Tennessee, that it was done "feloniously."

2. EVIDENCE. No evidence should be arbitrarily rejected, but the question of its weight and credibility is one exclusively for the jury to decide.

3. ARGUMENT. It is not allowable for the attorney-general in his closing argument to refer to or state facts relating to the accused, likely to influence the verdict, which have not been presented in evidence. But facts of history may be referred to in argument by way of illustration, though not strictly pertinent to the issue.

4. SAME. It is highly reprehensible for the attorney-general in his argument to suggest that the people would not submit to an acquittal, but it is not reversible error.

### FROM ROBERTSON.

Appeal in error from the Circuit Court of Robertson county.    Jo. C. STARK, J.

A. E. GARNER for Northington.

ATTORNEY-GENERAL LEA for the State.

FREEMAN, J., delivered the opinion of the court.

The defendant was indicted for unlawfully and knowingly bringing from the State of Kentucky two mules of the value of one hundred dollars each, the property of Cephas Jewell, then and before that time, having been feloniously taken, stolen and carried away from the said Jewell, in Ballard county, Kentucky,

Northington v. The State.

he well knowing the same to have been stolen at the time he brought them from said State into the county of Robertson. He was convicted, and sentenced to the penitentiary for the term of eight years.

Several errors are assigned by counsel, and pressed on our consideration in able and ingenious arguments:

First, That the indictment is fatally defective, because it does not aver that the defendant feloniously brought the mules into the State, in addition to the charge that he unlawfully and knowingly did so, giving the other facts of the property having been stolen, and his knowledge of the fact at the time he brought it from the State of Kentucky into the county of Robertson.

Before the act of 1875, ch. 31, (new Code), sec. 5462, it had not been made an offense by statute in our State to bring stolen property into the State. The receiving such property fraudulently and feloniously was a felony by the act of 1841–2, T. & S., 4697, had been made an offense. But by the act of 1875 it was provided "it shall be a felony for any person to bring into this State personal property exceeding fifty dollars in value, stolen in another State, knowing the same to have been stolen," and by next section the punishment is fixed in the penitentiary from three to ten years.

We need but say that the rule in the case of *Williams* v. *The State*, 8 Hum.; 595–6, requiring the term feloniously in all indictments for offenses punishable in the penitentiary, has been repeatedly disapproved of by this court as having nothing of sub-

stance in it. It is but the addition of an epithet to the facts charged, which could in no way serve to enlighten the defendant as to the charge against him. If the facts charged make out the offense, as defined by law, and especially if it is charged substantially in the language of the statute creating the offense, this is all that can be essential in such cases.

It is next insisted the court erred in his charge in reference to the effect of statements proven to have been made by the defendant as to where he had obtained the mules; at one time he stated he got them of a drover in Illinois, and to another person he had bought them in Missouri, in each case that he had paid $125 each for them.

The court charged that "these statements were to be taken into consideration by the jury, as brought out by the witnesses; that they should not arbitrarily discard any of the proof, but should take it all into intelligent consideration, but it is not meant, he says, by this you are bound to believe it all, for that is a question exclusively for you to believe and disbelieve just as you think right." This means fairly that while all the evidence on the question is to be fairly considered by the jury, none arbitrarily disregarded, yet its weight was for them, and they could believe it or not as they deemed it worthy of credit.

The cases cited, such as 3 Sneed, 693, where conversations of a party are proposed to be proven against a party, with an effort to exclude the question favoring the party having the conversation or making the admission, where the rule is recognized that all he

Northington v. The State.

said must go to the jury, does not serve the purpose of defendant in this case, as there was no attempt to exclude what he had said. In fact, there was nothing in what was proven against him at all, but all in his favor, except the fact that he had made contradictory statements as to how he obtained possession of the mules. But when statements against and favorable are permitted to go to the jury, the rule, as stated by this court in the above case is, "that it does not follow that all parts of the statements are to be regarded as equally worthy of credit, but it is for the jury to judge, in view of all the circumstances of the case, how much of the whole statement is worthy of belief: 3 Sneed, 693–4. If what he said in his favor is not contradicted by other proof, improbable or unreasonable, it may be believed by the jury. Still they are to judge of it, as of all other evidence, by all the circumstances of the case: *Ibid*, citing 1 Greenl. Ev., secs. 201, 218.

While his Honor might have stated the rule fuller than he has, we cannot see but that he has left the jury fairly to weigh this with all other testimony, and this is all that could be asked. It is clear from the testimony that there was no ground whatever on which the statements alluded to could have been found to be true. They were abundantly disproved by all the facts.

There were two requests for additional instruction. The first was as to confessions, but as there are no confessions proven, we need not notice this. The other was substantially that the statements of the

party as to where he got the mules "could not be arbitrarily rejected unless the proof showed they were untrue, and if it failed to do so, the jury could not arbitrarily reject such statements." This had been substantially charged by his Honor when he told them they were the judges of the weight of this testimony, but they could not arbitrarily reject it. There was no reversible error in this.

It is next objected that the attorney-general, in his closing argument to the jury on the question of insanity, alluded to the fact of the *Lawless* case and *Guiteau* case, and said this case does not show one-half, nor even one-hundredth part of the eccentricities that Guiteau showed, that *his* whole life was one of oddities and eccentricities, that experts were called from the whole nation, and after he was convicted by a jury, he appealed, and was hung; that Tom Buford killed Judge Elliott, and never went to the asylum. When the attorney-general started to speak of these matters, the bill of exceptions says, the defendant's counsel objected, and called on the court; but the court said that these matters were merely an argument, and refused to stop him, to which the defendant excepted.

On this question we have had three cases involving the principle. The first, *Saunders* v. *Baxter*, 6 Heis., 377, where in an action for libel the plaintiff, arguing the case for himself, being a well-known lawyer of eminence, concluded his argument at some length by giving a history and account of a party concerned in the libellous publication, "having attempted to as-

sassinate him"—there being no such evidence before the jury. This court reversed for this in part, saying, that "to permit outside influence or unproven facts to be thrown into the balance in determining the rights of parties, is but the mockery and counterfeit of justice, and that the solemn statement by counsel of influence and character of an unproven fact, is just as pregnant of results in affecting the minds of a jury as if attested by sworn witnesses.

In the case of *Turner* v. *The State,* 4 Lea, 209, the district attorney, in closing the argument in a prosecution for larceny, told the jury that there was a regular band of thieves in the neighborhood where the crime was committed; that the defendant was one of them, naming a number of others, these being persons known to the jury to have been recently convicted of crimes. He then said: "If the jury failed to convict the defendant in this case, he would not blame the people for taking the law in their own hands." This was remonstrated against by counsel, but permitted by the court. This was sharply reprimanded by this court, and the judgment reversed for this cause. Judge McFarland, delivering the opinion, says: "We have no disposition to exercise our revisory power in a censorious spirit, and we do not say that we would reverse for every departure from strict propriety in matters of this character, but we could not hesitate to do so when we can see that improper influences have been permitted to go before the jury likely to deprive the defendant of a fair and impartial trial. Too great care cannot be

taken in excluding from the jury all improper influences. The guilty ought to be punished, but their conviction ought to be obtained upon the law and evidence."

In both these cases the matter reprehended was the introduction of facts, in connection with the defendant then on trial, not in proof, tending to prejudice the case of the prisoner. In the latter there was the added element, that if the jury failed to convict it would be proper for the people to take the law in their own hands. That these cases were correctly decided we have no doubt.

The other case is *Scott* v. *The State*, 7 Lea, 235, in which the attorney-general said to the jury in concluding his argument, that "if the juries don't punish the crime, the people will rise up and punish it." This was said by the Chief Justice delivering the opinion of the court, to "have been very reprehensible, and the court should have rebuked him in the presence of the jury, but we do not think it would justify us in granting a new trial." "The law officers of the State," he added, "are under peculiar obligations to set an example of respect for the law, and to do and say nothing that will tend to beget or encourage lawlessness." On the facts of that case the guilt of the party was clear, and as said by the Chief Justice, the verdict a merciful one.

From these cases the principle deducible is, that while a suggestion as to what the people might do in case of failure to convict, is not reversible error, though highly reprehensible, yet a statement of facts

in relation to the party on trial, affecting the issue, and tending to influence the minds of the jury, when not in proof, is sufficient ground for such action on the part of this court. In other words, when matter not in proof is presented and urged before the jury, in relation to the defendant, likely to influence the verdict against the prisoner, it is a violation of his right to be tried on the testimony, and have his guilt or innocence determined by that alone.

The like principles have been held by courts of several of our sister States: 11 Tex. Court of App., 377, also 399; 10 Georgia R., 522, in which last case Judge Lumpkin said, in reference to the duty of the court to check improper argument not based on the facts in proof, "that the practice is reprehensible, and ought in every case to be promptly repressed, nor ought the presiding judge to wait until he is called on to interpose: *Thompson* v. *State*, 43 Tex. Rep., 274.

While it was not pertinent to the issue in this case to cite the facts, or supposed facts, in the cases of Guiteau and Buford, still such reference, by way of illustration, we do not think sufficient ground for reversal of the verdict of a jury. The true basis of the argument is always the facts presented in the testimony, but we cannot see that such allusions as are here found could have materially affected the conclusions of the jury, besides they are not within the principle established by our cases. They are not facts detailed by the attorney-general, not in proof, in reference to the prisoner or his conduct or relations,

but only matters of current history, used by way of enforcing an argument. This objection is not sufficient for reversal.

The only other question is, whether the defendant was insane or not? After careful examination of the testimony on this point, we are not satisfied the verdict should stand, and deem it proper that there shall be another trial of the case in which this issue shall be more fully investigated.

His Honor gave the jury nothing to guide them on this question; only said to them they must be satisfied beyond a reasonable doubt that he was of sound mind. The real question in most cases of crime where the matter of sanity is the turning point of the case, is, whether the act was the normal conduct of a sound mind excited by passion, provocation, or greed or desire for gain in a case of theft, or was prompted by an insane impulse, the result of abnormal and diseased activity dominating and controlling the will of the party. In other words, prompted by a natural but evil impulse, or by a diseased and deranged activity.

The judgment will be reversed, and remanded for another trial.