Rockingham, }
Dec. 4, 1928. }

## STATE v. EARL DAVIS.

*Stewart E. Rowe, solicitor* (by brief and orally), for the state.

*William H. Sleeper,* for the defendant.

SNOW, J. A witness for the state, having stated on direct examination that the matter of the proposed break was talked over before the entry in the presence of the defendant, further testified: "Q. Now go on. A. Then we said we would bring out, whatever we would get we would divide in half with the four of us. Q. Was that agreed to by Earl Davis? A. Yes." The witness then described the entry and removal of the goods by two members of the party while the defendant remained without, the subsequent meeting of the four, and the division of the spoils in which the defendant shared. In the course of the re-direct examination the court inquired: "Q. (*The Court*) . . . When you boys met that night before you went up to the store, did you all of you together plan just what you would do? A. Yes. *The Court.* Whether or not Earl Davis had anything to do with the plan that you afterwards followed out? . . . *The Witness.* Well, I think we all was in it. *The Court.* Whether or not you talked it over together?" Objections being made to the last two questions, both as to form and substance, the court withdrew all its previous inquiries, and put the following questions to which exceptions were severally taken: "*The Court.* . . . I will ask you . . . to tell me just what the conversation was at the time you boys met that night, and who took part in it. *The Witness.* I don't exactly remember just exactly what was said, but there was two of us planned to go in the store, and then we was to divide up, and we was to meet in back of the police station. *The Court.* Are you now telling me just what was talked over in the presence of all of you? *The Witness.* Yes, we were all there. . . . Q. (*The Court*) Now, why didn't Mr. Davis go in with you boys? A. I don't know just why he didn't."

It is the right and duty of the presiding justice to take part in the examination of witnesses whenever he deems it essential to elicit the truth or necessary to a clear understanding of the testimony. The right is subject only to the limitation that he must preserve a judicial attitude and refrain from disclosing his own views and opinions. *State* v. *Hause*, 82 N. H. 133, 137, 138. This common-law practice (2 Wig., Ev., s. 784; *Ib.*, 4, s. 2484) has never been questioned in this jurisdiction. The occasion for such examination, and the extent to which it should be carried, are largely matters of discretion with the court. The witness, having stated that the defendant had a part in the plan, it was desirable that the jury should be informed as to what that part was, in other words just what was said and done. The record does not disclose that the presiding justice exceeded his right or abused his discretion.

The several exceptions sought to be taken during the course of the argument, being addressed to the argument itself and not to its allowance, raised no question of law. *Tuttle* v. *Dodge*, 80 N. H. 304, 312; *O'Dowd* v. *Heller*, 82 N. H. 387, 391. As the presiding justice by the transfer, and the parties by their arguments, have treated the exceptions as seasonably and properly taken (*Dziedzic* v. *Company*, 82 N. H. 472, 474) they have, however, been considered.

1. The two boys who had confessed to breaking and entering the store were called as witnesses by the state. The defendant's counsel, having expressed his aversion to placing reliance upon such testimony, the state's counsel in reply, commenting upon the common use of such evidence in criminal trials, stated that the defendant's counsel, by reason of his experience as county solicitor and his extended practice, knew of such usage, and that "No doubt when he was solicitor he relied . . . many times [on] the testimony of a person who had been in crime." Objection being made to the latter expression, the court offered to strike it out if the defendant's counsel denied the assertion. No denial being made, the trial proceeded without further insistence upon the objection.

Even if the silence of the defendant's counsel and failure to insist upon a ruling were not a waiver of his objection (*Lee* v. *Dow*, 73 N. H. 101, 105; *Felch* v. *Weare*, 66 N. H. 582, 583), the exception is still without merit. The public service of the defendant's counsel and his extended practice in the county must be presumed to have been matters of common knowledge to a jury drawn from that county. His knowledge of, and probable participation in, the submission of such evidence was a fair inference therefrom. The words "No doubt" were used argumentatively in the sense of "it is probable." A fact which may be inferred from facts proved, or which is within the common knowledge of the jury, may be stated *arguendo* as established. *Kambour* v. *Railroad*, 77 N. H. 33, 52; *Maravas* v. *Corporation*, 82 N. H. 533, 538; *Beliveau* v. *Company*, 81 N. H. 57, 59. The argument appears to have been well within the bounds of legitimate advocacy. *Hyland* v. *Hines*, 80 N. H. 179, 184.

2. As an instance of the use of like evidence, the state's counsel, in argument, cited the celebrated trial of Lieut. Charles Becker in New York for the murder of Herman Rosenthal in which the state called as a witness Bald Jack Rose who was implicated in the crime (see 91 N. Y. Misc. Rep. 329; 155 N. Y. Supp. 107; 210 N. Y. 274; 215 N. Y. 126; Ann. Cas., 1917 A. 600; 215 N. Y. 721), at the same time characterizing his mention of the case as "a story." Apparently the

citation was made on the theory that the *Becker* case had become so far historical in criminal annals that a jury might be presumed to be familiar with the course of the trial. See 1 Thompson, Trials, s. 984; *Heyl* v. *State*, 109 Ind. 589; *Northington* v. *State*, 82 Tenn. 424, 431. The uncertainty as to the extent to which the details of such a trial may be generally understood and remembered makes such references dangerous, and they should not be encouraged. It is unnecessary, however, to determine whether the cited incident qualifies as a notorious historical event. No suggestion was made connecting the defendant with that case, or calling for any comparison other than the like use of the testimony of an accomplice. The fact of the general employment of such evidence in criminal trials (see 2 Bish., New Crim. Pro., s. 1160; 1 R. C. L. Accomplices, s. 8; P. L., c. 336, s. 37; *State* v. *Buzzell*, 59 N. H. 65) is a matter of public and common knowledge of which the court will take judicial notice. It follows that the existence of the practice was a proper matter of comment without proof. 3 Wig., Ev., ss. 1806, 1807 (2). The reference to the *Becker* case was, therefore, of negligible importance, being no more than an illustration of a fact, otherwise conclusively established. The statement objected to was not material to any controvertible issue in the case. See 1 Thompson, Trials, s. 967. As a basis for alleged prejudicial error it stands no differently than the statement in argument of any immaterial fact. As used, the citation had no tendency to prejudice the jury and could not have produced the verdict. If error, it was harmless. *Story* v. *Railroad*, 70 N. H. 364, 387; *Parker* v. *New Boston*, 79 N. H. 54, 56; *Williams* v. *Company*, 80 N. H. 137, 138.

3. The defendant admitted that he had been with the two boys, who had confessed to breaking and entering, when they planned the break, that he followed them to the store, was in communication with them while they were within, met them later at the division of the spoils, and received and carried away some of the stolen articles. He denied any part in planning the break, and testified that he thought his companions were fooling, that he tried to induce them to leave the store after they had entered, and participated in the division of the spoils through fear of his mates. The evidence as to his concern in planning the affair was, therefore, conflicting.

The state's counsel in argument stated, without exception, that the defendant's counsel had agreed with him as to the proper sentencing of the other two boys who had been indicted for the break, and asserted that, "if he [the defendant] was with them in this matter, it

isn't out of reason that I should be going ahead with the case concerning him," to which latter statement exception was taken. Defendant gave as the ground of his objection that state's counsel was seeking to have the jury draw an inference of the defendant's guilt because he was being prosecuted. The admitted presence of the defendant with the confessed breakers during the planning of the break and the division of the stolen property was evidence in support of the good faith of the state in bringing him to trial, and was a legitimate matter of comment in refutation to any claim that he was being persecuted. The state's counsel recited the fact only as supporting the reasonableness of his "going ahead with the case." It is improbable that the jury drew the inference imputed to the remark in disregard of the express application made of it by the state's counsel. *Seely* v. *Insurance Co.*, 73 N. H. 339, 343, 344. Since the admitted facts were used only for a purpose for which they were competent there was no error. *Rogers* v. *Kenrick*, 63 N. H. 335, 341; *Smith* v. *Morrill*, 71 N. H. 409, 411.

The request for instructions not having been presented until after the submission of the arguments, the defendant takes nothing by his exception to its denial. Rule 52, 78 N. H. 697.

*Exceptions overruled.*

All concurred.