Portsmouth Family Division
No. 2007-405

CINTIA TOSTA

v.

RUSSELL BULLIS, JR.

Submitted: January 31, 2008
Opinion Issued: February 26, 2008

Cintia Tosta, by brief, *pro se*.

*Minutelli Law Office, P.L.L.C.*, of Portsmouth (*Steven J. Minutelli* on the brief), for the defendant.

BRODERICK, C.J. The defendant, Russell Bullis, Jr., appeals an order of the Portsmouth Family Division (*DeVries*, J.), entered on the recommendation of a Marital Master (*Fishman*, M.), denying his motion to dismiss a domestic violence petition filed by his wife, the plaintiff, Cintia Tosta. He also appeals the trial court's order granting her a final domestic violence protective order after a hearing. *See* RSA 173-B:5 (Supp. 2007). We reverse.

The record reveals the following. On June 18, 2006, the parties were involved in an altercation while traveling in their car on a Massachusetts highway. It is undisputed that the defendant struck the plaintiff during the course of this argument, and that the blow caused her to bleed. Although the plaintiff contacted the police to report having been assaulted after the parties returned to their home in Hudson, no charges were ever filed against the defendant in either Massachusetts or New Hampshire.

The parties subsequently began divorce proceedings in the Portsmouth Family Division. Nevertheless, they continued to live together—without any further instances of physical violence—until March 2007. On March 26, tension between the parties again escalated during an argument about potential post-divorce custody arrangements for their young daughter. The next day, the parties had a second heated argument on the same subject. The defendant claimed that the plaintiff repeatedly struck him during this dispute, which prompted him to gather his belongings and move out of the parties' home. The defendant did not inform the plaintiff of his decision to leave.

On March 29, 2007, the plaintiff filed a domestic violence petition requesting protection from abuse, claiming:

> [The defendant] [h]it me before 6-18-06 and police took report with pictures. This in Mass[achusetts]. Divorce filed in Ports[mouth] Family Court and I am afraid he will hit me again. He was driving around my and my sister's house this morning in Haverhill. He says he has a big long knife in his car.

The plaintiff sought court orders restraining her husband from contacting her or entering her residence, and awarding her temporary custody of the parties' daughter.

The defendant filed a motion to dismiss the petition, arguing it failed to allege that his conduct presented a "credible threat" to the plaintiff's safety. *See* RSA 173-B:1, I (2002). The trial court denied his motion. At the ensuing hearing on the domestic violence petition, *see* RSA 173-B:3 (2002), the court heard testimony from both parties about the assault that occurred during their argument on June 18, 2006. The plaintiff explained the nine-month gap between the assault and her decision to seek a protective order as follows:

> I came this court this week because he left out of the house the day before and he don't do anything. I was at work and he just go inside the house. He's got all the stuff without talk to me[,] he was going to leave to the house you know. It was so surprise and I really scared what he thinking, why he wants to do it. So I know he's being violence before and I want to get—be safe me and my childrens, especially my first son.

The plaintiff repeatedly expressed a general fear of the defendant, and claimed not to know how she could be safe without a restraining order.

The plaintiff did not, however, provide evidence that the defendant had in any way engaged—or even threatened to engage—in abusive behavior after June 2006. *See* RSA 173-B:1, I(a)-(g) (listing acts which qualify as abuse). There was no mention at the hearing of the defendant possessing a knife, and the only evidence relating to the defendant having been at the plaintiff's sister's house during the week of March 29 was his own testimony that he went there to pick up the parties' daughter from a third-party babysitter. Moreover, the plaintiff expressed a willingness to allow the defendant to see their baby, and testified that "[the defendant is] good for the baby. I never saw he's being violent with her."

In an addendum to the final protective order, in addition to marking a check-box indicating her conclusion that the defendant had committed assault, the master made the following narrative findings:

> [T]he [defendant] committed . . . abuse when he punched [the plaintiff] on 6/18/06. Tension between the parties has significantly escalated over the past several weeks—Mr. Bullis left the home without notice to Ms. Tosta—she was fearful of his state of mind. In addition, he was seen driving around both Ms. Tosta's [and] Ms. Tosta's sister's home on the day the [domestic violence petition] was filed.

The trial court ordered the defendant to remain at least 100 feet away from the plaintiff, to not enter her residence and to attend personal counseling for six months, among other things.

On appeal, the defendant argues that: (1) the trial court erred by not dismissing his wife's domestic violence petition for failing to state a basis for relief under RSA chapter 173-B; (2) the evidence presented at the hearing on her petition was insufficient to support entry of a final protective order; and (3) the court engaged in an unsustainable exercise of discretion by concluding that his alleged conduct constituted a credible threat to the plaintiff's safety and entering a final protective order. We address each issue in turn.

With respect to the defendant's first argument, "[i]n reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, we assume the truth of the facts alleged by the plaintiff and construe all reasonable inferences in the light most favorable to the plaintiff." *Farm Family Cas. Ins. Co. v. Town of Rollinsford*, 155 N.H. 669, 670 (2007). "We then engage in a threshold inquiry that tests the facts in [the] petition against the applicable law." *In the Matter of Larue & Bedard*, 156 N.H. 378, 380 (2007). Where the facts alleged by a plaintiff are reasonably susceptible of a construction that would permit legal relief, we will uphold the denial of a motion to dismiss. *See id.*

■ "Any person may seek relief pursuant to RSA 173-B:5 by filing a petition, in the county or district where the plaintiff or defendant resides, alleging abuse by the defendant." RSA 173-B:3, I. "Abuse," as that term is defined in RSA chapter 173-B, means "the commission or attempted commission of one or more of the following acts by a family or household member ... where such conduct constitutes a credible threat to the plaintiff's safety." RSA 173-B:1, I. Only one of the acts enumerated in the statute is at issue in this appeal: assault, as defined in RSA 631:1 (2007) through RSA 631:3 (2007). *See* RSA 173-B:1, I(a). Thus, to survive the defendant's motion to dismiss, the plaintiff needed to allege sufficient facts to support a finding that the defendant had assaulted her, and that this conduct constituted a credible threat to her safety. *See* RSA 173-B:1, I; *In the Matter of Alexander and Evans*, 147 N.H. 441, 442 (2002).

The defendant concedes that the petition at issue here may be readily understood to allege a simple assault. *See* RSA 631:2-a (2007). Notwithstanding this, he maintains that "even if assault occurred[,] the most liberal reading of the ... petition does not lend itself to a conclusion that the ... assault represent[ed] a credible threat to Ms. Tosta" at the time she filed her domestic violence petition. When making this argument,

he emphasizes the nine-month gap between the assault at issue here and the plaintiff's decision to seek a restraining order.

 We find, however, that the allegations in the petition were susceptible of a reading supporting the conclusion that the defendant's conduct posed a credible and continuing threat to the plaintiff's safety. Her petition alleged that the defendant had not only hit her in the past, but had recently followed her while armed with a knife. These statements permit one to reasonably infer that the plaintiff, who was in the midst of divorce proceedings, was at risk of further abuse. Therefore, the trial court did not err when it found that the petition survived the threshold inquiry presented by a motion to dismiss.

We next address the defendant's argument that there was insufficient evidence presented at the hearing on his wife's petition to support entry of a final domestic violence protective order. *See* RSA 173-B:5. "[W]e review sufficiency of the evidence claims as a matter of law, and uphold the findings and rulings of the trial court unless they are lacking in evidential support or tainted by error of law." *Fillmore v. Fillmore*, 147 N.H. 283, 284 (2001) (quotation omitted); *see* RSA 173-B:3, VI. When performing this review, "[w]e accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony." *Fillmore*, 147 N.H. at 285.

 To obtain relief under RSA chapter 173-B, a plaintiff must show "abuse" by a preponderance of the evidence. RSA 173-B:5, I. The threshold misconduct which will support a finding of abuse, *see* RSA 173-B:1, I(a)-(g), need not immediately precede the filing of a domestic violence petition. The threat posed by such conduct to a plaintiff's safety, however, must be ongoing, since "[a] finding of abuse shall mean the defendant *represents* a credible threat to the safety of the plaintiff." RSA 173-B:5, I (emphasis added). Further, upon such a showing, the trial court's task is to "grant such relief as is necessary to bring about a cessation of abuse." *Id.* As we have observed in the past, "[t]he purpose of [RSA chapter 173-B] is to preserve and protect the safety of the family unit for all family . . . members by entitling victims of domestic violence to immediate and effective police protection and judicial relief." *In the Matter of Morrill and Morrill*, 147 N.H. 116, 117 (2001) (quotation omitted).

 In short, domestic violence protective orders are to be utilized when a victim has shown a need for protection from an ongoing, credible threat to her safety. Given this statutory objective, we have required that the threshold misconduct prompting a domestic violence petition be neither "too distant in time" nor "non-specific." *Fillmore*, 147 N.H. at 286. We

have also required a plaintiff to show more than a generalized fear for personal safety based upon past physical violence and more recent non-violent harassment to support a finding that a credible threat to her safety exists. *Alexander and Evans*, 147 N.H. at 441-43.

■ Turning to the case at hand, we agree with the defendant that there was insufficient evidence to support a finding that he was engaged in "abuse" warranting a protective order under RSA chapter 173-B. The plaintiff demonstrated that she was assaulted by the defendant on one occasion during the course of their relationship. While the record certainly supports the master's finding that this criminal conduct occurred, some nine months passed between the assault and the plaintiff's filing for a protective order. It was undisputed that during those nine months, the parties lived together continuously without further instances of physical violence on the part of the defendant, despite the commencement of divorce proceedings. The plaintiff also testified that it was the defendant's sudden and unexplained decision to *leave* her home, as opposed to his affirmative display of some threatening behavior, that ultimately prompted her to file for a protective order. These unique facts lead us to conclude that the assault at issue in this case fails to qualify as the threshold element of misconduct that is a prerequisite to a finding of abuse, *see* RSA 173-B:1, I; *Fillmore*, 147 N.H. at 286, since the link between the plaintiff's request for protection and the 2006 assault was attenuated at best.

■ In addition, there was insufficient evidence to support a finding that the defendant represented a credible threat to the plaintiff's safety at the time she filed a domestic violence petition. The master received no evidence at the hearing that the plaintiff was in need of protection from an ongoing, credible threat to her safety. Indeed, there was no evidence that the defendant had in any way threatened the plaintiff's safety in the weeks or months leading up to her filing. The only conclusion supported by a preponderance of the evidence presented at the hearing on this matter is that some other forces, as opposed to the June 2006 assault, prompted the plaintiff to seek a restraining order. Accordingly, it was error for the trial court to enter a final domestic violence protective order here.

Given this conclusion, we need not address the defendant's argument that the trial court's entry of a final protective order was an unsustainable exercise of discretion.

*Reversed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.