Derry Family Division
No. 2010-290

ERIC LEE KNIGHT

v.

CHERYL ANN MAHER

Submitted: March 10, 2011
Opinion Issued: April 14, 2011

Eric Lee Knight, by brief, *pro se.*

Cheryl Ann Maher, by brief, *pro se.*

CONBOY, J. The defendant, Cheryl Ann Maher, appeals an order of the Derry Family Division (*Moore*, J.) granting a final domestic violence protective order to the plaintiff, Eric Lee Knight. *See* RSA 173-B:5, I(a) (Supp. 2010). We reverse.

The relevant facts follow. The parties are former spouses who together have three children: twin sixteen-year-old daughters and a ten-year-old son. In October 2009, the parties entered into an agreement wherein the plaintiff assumed primary residential responsibility for the parties' children. The defendant maintains visitation with the children.

On March 18, 2010, the plaintiff, who is a physician, filed a domestic violence petition seeking an order of protection from the defendant. In his

petition, the plaintiff asserted that the defendant sent numerous threatening and harassing emails and text messages to him, made false accusations against him in the local and national news with the intent to harm him personally and professionally, and filed false reports against him with police departments, the New Hampshire Board of Medicine (NHBM), and the New Hampshire Division for Children, Youth, and Families (DCYF). The plaintiff asserted that "[g]iven [the defendant's] mental state and the social circles she is in" he had "concerns for [the] safety of [his] person and property," as well as concerns about the financial impact the defendant's actions could have upon him.

The trial court held a hearing on the plaintiff's petition on April 19, 2010, at which both parties were present. The plaintiff submitted a number of exhibits to the trial court, including emails and text messages that he received from the defendant, which he alleged to be threatening in nature. He also submitted news articles in which the defendant was quoted as stating that the plaintiff had been an abusive husband, that he arranged for "hush money" payments to her from a man she later accused of sexual assault, and that he had caused harm to their children. The plaintiff testified as follows:

> My concern about risk to property and person is not so much directly from Cheryl. It's because she's going around telling a lot of people all this stuff and, you know, making me out to be this monster with all these things that are absolutely untrue. And the crowd that she hangs out with are basically the ones over there at the Friendship Center. It includes a lot of people who have criminal records. And my concern has been, with all of these bizarre things that she's saying — and it evolves over time — it becomes worse over time — that someone who considers — who believes her — someone who doesn't know the whole story and doesn't know the other side of the issue — might take it upon themselves to try to get justice when she claims that she's not getting justice through any of the proper things.
>
> . . . .
>
> And through any of the proper channels. And so my concern is for my safety and safety of property, not so much directly from what she may do, as a result of all this stuff that she's doing in media, in talking to people and describing things — making things up the way she's doing.

The defendant admitted to sending the plaintiff the emails and text messages in question, and further admitted to contacting news media and

making statements that she understood would negatively affect the defendant's livelihood as a physician and his reputation in the community. Nevertheless, the defendant denied that any of her statements to news outlets about the plaintiff were false or that she made them to cause him harm. She testified that her numerous communications with the plaintiff were her attempt to force him into taking her to court because she believes he does not "listen to [her] when it comes to [the] children and their needs." She further testified that she believed the plaintiff's position as a doctor and member of the Mormon Church has given him credibility and that, in fact, it is the plaintiff who has caused harm to her and their children.

After the hearing, the trial court granted the plaintiff's request for a protective order. The trial court concluded as follows:

> This Court is entering a specific finding that based upon the intent behind the Defendant's actions and her acknowledgement that her purpose in engaging [in] said contact was to force the Plaintiff to "take her back to Court" that her continuation with that course of conduct despite the Plaintiff's numerous requests to cease and desist constitutes harassment under RSA 644:4 and that the Defendant's acknowledgement that her continued involvement in [the] aforementioned campaign would negatively affect the Plaintiff's emotional and psychological state as well as his professional reputation demonstrates to this Court that the [Defendant's] purpose in the above referenced course of conduct was to annoy or alarm the Plaintiff without a lawful purpose or constitutional right to do so. The Court, based on the totality of the circumstances surrounding the Defendant['Js aforementioned course of conduct finds the Plaintiff's statement that:
>
>> Given her mental state and the social circles she is in this has raised concerns for [the] safety of my person and property, as well as causing me to lose income by missing work to deal with all of this[,]
>
> to be a reasonable concern of the Plaintiff warranting Court intervention.

The sole issue on appeal is whether the evidence supports the trial court's findings that the defendant committed one of the acts enumerated in RSA chapter 173-B, and that this conduct constituted a credible threat to the plaintiff's safety.

RSA chapter 173-B governs the protection of persons from domestic violence. The purpose of this chapter "is to preserve and protect the safety of the family unit for all family members by entitling victims of domestic

violence to immediate and effective police protection and judicial relief." *Walker v. Walker*, 158 N.H. 602, 605 (2009) (quotation and ellipsis omitted).

Pursuant to RSA 173-B:3, I (Supp. 2010), "[a]ny person may seek relief . . . by filing a petition, in the county or district where the plaintiff or defendant resides, alleging abuse by the defendant." "A finding of abuse shall mean the defendant represents a credible threat to the safety of the plaintiff." RSA 173-B:5, I (Supp. 2010). "Upon a showing of abuse of the plaintiff by a preponderance of the evidence, the court shall grant such relief as is necessary to bring about a cessation of abuse." *Id.* "Abuse," as defined in RSA chapter 173-B, means "the commission or attempted commission" of certain enumerated acts, such as harassment, by a spouse or former spouse, "where such conduct constitutes a credible threat to the plaintiff's safety." RSA 173-B:1, I (Supp. 2010).

The defendant does not dispute that the petition alleges one of the acts enumerated in RSA 173-B:1, I — harassment. Nevertheless, she argues that the protective order should not have been granted because all of the requirements of RSA chapter 173-B and RSA 644:4 (Supp. 2010) were not met. Assuming, without deciding, that the defendant's conduct met the criteria for harassment under RSA 644:4, we hold that the evidence fails to support the trial court's finding that the defendant's conduct constituted a credible threat to the plaintiff's safety.

"[W]e review sufficiency of the evidence claims as a matter of law, and uphold the findings and rulings of the trial court unless they are lacking in evidential support or tainted by error of law." *Fillmore v. Fillmore*, 147 N.H. 283, 284 (2001) (quotation omitted); *see* RSA 173-B:3, VI (Supp. 2010). When performing this review, "[w]e accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony." *Fillmore*, 147 N.H. at 285.

■ Domestic violence protective orders are to be utilized when a victim has shown a need for protection from an ongoing, credible threat to his or her safety. RSA 173-B:5, I; *Walker*, 158 N.H. at 605. Given this statutory objective, we have required a plaintiff to show more than a generalized fear for personal safety based upon non-violent harassment to support a finding that a credible threat to his safety exists. *In the Matter of Alexander and Evans*, 147 N.H. 441, 441-43 (2002) (holding that while unwanted telephone calls and rude gestures made by the defendant to the plaintiff were enough to support a finding of harassment, they were insufficient to support a finding that the defendant's conduct constituted a credible threat to the plaintiff's safety).

■ Here, while there may have been substantial evidence that the defendant's conduct negatively affected the plaintiff's emotional or financial

well-being at the time he filed his domestic violence petition, there was insufficient evidence to support a finding that the defendant represented an ongoing, credible threat to the plaintiff's *physical safety*, and that therefore he was in need of protection. Indeed, the plaintiff conceded that he did not feel the defendant herself posed a risk to his safety, and he presented no evidence that the defendant had in any way threatened his safety at any time. The plaintiff's concern for his safety was based upon his speculation that as a result of the defendant's statements about him, unknown persons might take it upon themselves to harm him. We conclude that the evidence in this case does not support a finding that the defendant's conduct posed a credible threat to the plaintiff's safety. Accordingly, it was error for the trial court to enter a final domestic violence protective order against the defendant.

*Reversed.*

DALIANIS, C.J., and DUGGAN, HICKS and LYNN, JJ., concurred.