**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2015-0709, <u>Amanda Russo v. Eric Parsons</u>, the court on June 23, 2016, issued the following order:**

Having considered the brief and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Eric Parsons, appeals the final stalking protective order issued by the Circuit Court (<u>LeFrancois</u>, J.) for the protection of the plaintiff, Amanda Russo. He argues that the evidence was insufficient to support the court's order.

We review sufficiency of the evidence claims as a matter of law and uphold the findings and rulings of the trial court unless they are lacking in evidentiary support or tainted by error of law. <u>Fisher v. Minichiello</u>, 155 N.H. 188, 190 (2007). We accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony. <u>Id</u>. We view the evidence in the light most favorable to the prevailing party – in this case, the plaintiff. <u>Id</u>.

A person commits the offense of stalking if he or she purposely, knowingly, or recklessly engages in a course of conduct targeted at a specific person which would cause a reasonable person to fear for his or her personal safety, and the person is actually placed in such fear. <u>See</u> RSA 633:3-a, I(a) (2007). "Course of conduct" means two or more acts over a period of time, however short, which evidence a continuity of purpose. <u>See</u> RSA 633:3-a, II(a) (2007). A course of conduct may include following, approaching, or confronting the person, <u>see</u> RSA 633:3-a, II(a)(2), appearing in close proximity to, or entering, the person's residence, <u>see</u> RSA 633:3-a, II(a)(3), or an act of "communication," as that term is statutorily defined, <u>see</u> RSA 633:3-a, II(a)(7).

The plaintiff testified that she had been volunteering at an Army-Navy store in Brentwood when, toward the end of October 2014, the defendant became a business partner with the store's general manager and started spending time at the store. The plaintiff testified that shortly thereafter, the defendant started making sexual comments to her and initiating physical contact, such as giving her a back rub and touching her buttocks, without her consent. Over the course of several months, on numerous occasions and in various ways, the defendant expressed to the plaintiff that he was interested in having a sexual relationship with her.

The store's general manager testified that the defendant confided to him that he wanted to have a sexual relationship with the plaintiff. The manager testified that he observed the defendant physically contact the plaintiff without her consent. He testified that after the plaintiff spurned his advances, the defendant told him that he did not like the way she was treating him and that he "was going to get back at her." The defendant told the manager that he would "take her out" and "make her suffer."

In May 2015, the defendant sold his business interest in the store. The plaintiff testified that before the defendant left, he told her that if she would not have a relationship with him, then he would "ruin [her] life." In late August 2015, the police came to the store to inform the plaintiff that the defendant had filed a complaint against her. The defendant testified that he filed the complaint because the plaintiff assaulted him with a plastic pipe in April or May and because she harassed him when they worked together at the store. The plaintiff testified that she used the pipe to protect herself from the defendant. The record contains no indication that the complaint resulted in any court proceedings. The plaintiff testified that the defendant's filing of the complaint in August made her "even more nervous." She explained that she "thought he was gone" and that "things were going to stop," but that "it just [kept] happening." She testified that she filed the stalking petition because she has seen the defendant in "fits of rage" and that she was "afraid he's going to come after [her]."

Relying primarily upon our decision in Tosta v. Bullis, a domestic violence case interpreting RSA chapter 173-B, the defendant argues that the evidence was insufficient to prove that he represented an ongoing, credible threat to the plaintiff's safety because she did not file her stalking petition until September 1, 2015, four months after he left the store. In Tosta, nine months had passed between the incident of domestic violence and the filing of the request for a protective order. Tosta v. Bullis, 156 N.H. 763, 767-68 (2008). We concluded that the evidence was insufficient to support a domestic violence protective order. Id. However, in Tosta, the parties continued to live together after the assault, and there was no evidence that the defendant had engaged in or threatened to engage in abusive behavior during that nine-month period. Id.

In this case, the plaintiff explained that after the defendant left the store in May 2015, she did not expect to have any more contact with him, but he filed a complaint against her in August 2015, which renewed her fear that he would not leave her alone. We conclude that this evidence, when considered within the context of the defendant's course of conduct at the store, was sufficient to prove that the plaintiff reasonably feared for her personal safety. See Fisher, 155 N.H. at 190.

The defendant next argues that the evidence was insufficient to support the trial court's finding that the plaintiff's fear was reasonable because he

suffers from PTSD. The trial court found that the plaintiff's fear "was reasonable based on defendant's history of PTSD and anger issues which were observed by plaintiff and other witnesses in the premises where they worked." The general manager testified that the defendant told him that he has PTSD and "anger issues." Similarly, the plaintiff testified that the defendant became enraged "because of the PTSD." When the defendant was asked by his counsel if he suffers from PTSD, he testified, "I am labeled that for nightmares, yeah." On appeal, he argues for the first time that the evidence was insufficient to prove that he suffers from PTSD because the plaintiff introduced no medical records or expert medical evidence. It is a long-standing rule that parties may not have judicial review of matters that were not properly raised in the trial court. Thompson v. D'Errico, 163 N.H. 20, 22 (2011). The record fails to show that the defendant raised this issue at trial; accordingly, we conclude that it is not preserved for review.

Finally, the defendant argues that the evidence was insufficient because the plaintiff's witnesses lacked credibility. He asserts that the plaintiff did not testify truthfully about the assault with the plastic pipe, and that the store manager and a store employee who testified were biased and unreliable witnesses. "It was within the trial court's discretion to resolve conflicts in the testimony, measure the credibility of witnesses, and determine the weight to be given evidence." Despres v. Hampsey, 162 N.H. 398, 405 (2011) (quotation omitted). We will affirm the trial court's findings if a reasonable person could have made such findings based upon the evidence presented. Cook v. Sullivan, 149 N.H. 774, 780 (2003). Based upon this record, we conclude that a reasonable person could have found the evidence sufficient to support the issuance of a protective order.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,**
**Clerk**

3