NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

10th Circuit Court-Portsmouth Family Division
No. 2020-0515

L.C.

v.

W.C.

Argued: April 28, 2021
Opinion Issued: July 15, 2021

New Hampshire Legal Assistance, (Chelsie Amanda Rommel and Mary Krueger on the brief, and Ms. Krueger orally), for the plaintiff.

Reid Law, PLLC, of Concord (Thomas Reid on the brief and orally), for the defendant.

MACDONALD, C.J.  The defendant, W.C., appeals a domestic violence final order of protection issued by the Circuit Court (Pendleton, J.).  See RSA 173-B:5 (Supp. 2020).  On appeal, the defendant argues that the evidence was insufficient to support a finding that his conduct constituted a credible, present threat to the safety of the plaintiff, L.C., because one of the incidents of abuse upon which the trial court relied was directed at her aunt.  The defendant also argues that the trial court unsustainably exercised its discretion by issuing protective orders that were broader than necessary to bring about cessation of the abuse.  We affirm.

I.  Facts

The relevant facts follow.  The parties are married.  The plaintiff filed the domestic violence petition in September 2020, alleging that the defendant had engaged in three incidents that constituted a credible, present threat to her safety.  The first incident, in October 2019, consisted of a text message from the defendant to the plaintiff, in which he called her a "back-country bitch" and threatened to break her jaw.  According to the plaintiff, the defendant sent the text message when she woke him up after he had "passed out" on the couch "from drinking too much."

The second incident occurred on Thanksgiving 2019 when, after drinking to the point of significant impairment, the defendant sought to prevent the plaintiff from entering the parties' residence by using his body to slam the door into her, bruising her leg significantly.  When the plaintiff finally entered the residence, she found the defendant standing with a loaded gun in his hand.

The third incident occurred in August 2020 when the defendant, after again drinking to the point of impairment, pointed a loaded gun at the plaintiff's aunt, who was staying with the parties that summer.  The parties' teenage grandson, over whom they have a guardianship, was also home at the time.  The plaintiff was not home, but upon returning and learning what had happened, she became frightened.  She removed the gun from the defendant while he was passed out on the couch and then left the house with her aunt to call the police.

Following trial, the trial court granted the plaintiff's request for a domestic violence final order of protection.  As to the Thanksgiving 2019 incident, the court found that the plaintiff established by a preponderance of the evidence that the defendant engaged in simple assault by knowingly causing unprivileged contact with her.  As to the August 2020 incident, the court found by a preponderance of the evidence that the defendant engaged in reckless conduct that placed or may have placed another in danger of serious bodily injury.

Having found that the defendant engaged in two predicate criminal acts, the court then concluded that his conduct posed "an ongoing credible threat" to the plaintiff's safety, explaining:

[The defendant] indicated he carries a loaded firearm on his person almost at all times.  He acknowledged that a person who is intoxicated should not have access to a loaded fire arm.  He acknowledged that some people when intoxicated may act recklessly.  In this case he did act recklessly.  His actions placed everyone in the house while he was severely intoxicated with a loaded firearm [on his person] at significant risk of physical harm.

2

Moreover, the court observed, the August 2020 incident placed the plaintiff "in great fear."

The court concluded that the risk of harm to the plaintiff from the defendant's conduct was ongoing based upon evidence of his habit of drinking to excess, handling loaded firearms, and engaging in threatening behavior. The court noted that the defendant "continued to drink after the November 28, 2019 incident" and "after the two month hospitalization [in May and June 2020] for alcohol related medical issues, from which he nearly died." The court also observed that both the Thanksgiving 2019 incident and the August 2020 incident involved the defendant's "threatening and assaultive behavior with a firearm within one year." The court found that the defendant's "other related behavior," such as calling the plaintiff "a bitch, accusing her of having affairs or texting aggressively," occurred within approximately the same one-year period and were related to the defendant's habitual, excessive drinking.

Based upon this evidence, the court expressed concern that unless it issued a domestic violence final protective order, "the Defendant may continue to drink while in possession of firearms" and engage in further "threatening and assaultive behavior with a firearm." Although the defendant claimed to have stopped drinking alcohol in August 2020, the court found that he "continues to pose a threat and . . . is likely to continue to do so at least until he can establish a period of sustained sobriety."

The trial court, therefore, found, by a preponderance of the evidence, that "abuse" within the meaning of RSA chapter 173-B had occurred and that the defendant's conduct posed a credible, present threat to the plaintiff's safety. Accordingly, the trial court issued a domestic violence final order of protection for a 12-month period. In addition to precluding the defendant from committing any further acts of abuse and requiring him to relinquish his firearms, the order prohibits him from having any contact with, or being within 300 feet of, the plaintiff and awards her the exclusive use and possession of the parties' residence. The defendant unsuccessfully moved for reconsideration, and this appeal followed.

II. Analysis

To obtain relief under RSA chapter 173-B, the plaintiff must show "abuse" by a preponderance of the evidence. Achille v. Achille, 167 N.H. 706, 716 (2015). RSA 173-B:1, I, defines "abuse" as "the commission or attempted commission" by "a family or household member or by a current or former sexual or intimate partner" of one or more specified criminal acts "where such conduct is determined to constitute a credible present threat to the [plaintiff's] safety." RSA 173-B:1, I (Supp. 2020). Such abuse may include "[a]ssault or reckless conduct as defined in RSA 631:1 through RSA 631:3." RSA 173-B:1, I(a). Thus, before issuing a domestic violence final order of protection under

3

RSA chapter 173-B, a trial court must find by a preponderance of the evidence that: (1) the defendant, "a family or household member or . . . a current or former sexual or intimate partner" of the plaintiff, committed or attempted to commit one or more of the enumerated criminal acts; and (2) the defendant's conduct constituted "a credible present threat" to the plaintiff's safety. RSA 173-B:1, I; see Achille, 167 N.H. at 716.

The defendant first argues that the evidence was insufficient to support a finding that his conduct constituted a credible, present threat to the plaintiff's safety because one of the incidents upon which the trial court relied was directed at her aunt. He concedes that his conduct during the August 2020 incident "constituted an act of reckless conduct," but asserts that it was not "abuse" under RSA 173-B:1, I, because it was not directed at the plaintiff.

Addressing this argument requires that we engage in statutory interpretation. We review the trial court's statutory interpretation de novo. Walker v. Walker, 158 N.H. 602, 605 (2009). We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used. Id. When the language of a statute is clear on its face, its meaning is not subject to modification. Id. We will neither consider what the legislature might have said nor add words that it did not see fit to include. Id.

The plain language of RSA 173-B:1, I, does not require the specified criminal conduct to be directed at the plaintiff. Indeed, the statute provides that the commission or attempted commission of "[c]ruelty to animals as defined in RSA 644:8" may constitute "abuse." RSA 173-B:1, I(h). The statute requires only that the conduct be "determined to constitute a credible present threat to the [plaintiff's] safety." RSA 173-B:1, I. As the plaintiff reasons, if an act of cruelty to an animal can pose a credible, present threat to a plaintiff's safety, then an act directed at a plaintiff's aunt can also pose such a threat. See RSA 173-B:1, I(e) (identifying "[d]estruction of property as defined in RSA 634:1 and RSA 634:2" as a criminal act that may constitute "abuse").

The defendant argues that because RSA chapter 173-B "is designed to protect persons from Domestic Violence" and because RSA 173-B:5, I, allows a court to order relief "[u]pon a showing of abuse of the plaintiff," it is only "logical" to conclude that an act directed at someone other than the plaintiff is not "abuse" under RSA 173-B:1, I. RSA 173-B:5, I (emphasis added). We disagree. Although relief under RSA 173-B:5, I, requires a showing of "abuse of the plaintiff," as defined by the statute, "abuse" means that the defendant committed or attempted to commit one or more of the enumerated criminal acts where such conduct poses a credible, present threat to the plaintiff's safety. As the trial court explained, "Abuse in the home can create a circumstance where the physical abuse may not target the specific individual but the actions still place[] the Plaintiff in fear for her physical safety, and that abuse may pose a credible risk to the [plaintiff's] physical safety." In sum, we

4

conclude that RSA 173-B:1, I, does not require that the plaintiff be the direct target of the statutorily-enumerated predicate offenses, but requires only that the defendant commit or attempt to commit one or more of those offenses and that the defendant's conduct pose a credible, present threat to the plaintiff's safety.

At oral argument, the defendant relied upon Seufert v. Seufert to argue for a contrary conclusion. See Seufert v. Seufert, 141 N.H. 766, 767-68 (1997). His reliance is misplaced. In that case, we construed the 1994 version of RSA chapter 173-B, which defined "abuse" as the occurrence of certain enumerated acts "between family or household members or current or former sexual or intimate partners," and excluded "minor children who reside with the defendant" from the definition of "family or household members." RSA 173-B:1, I (1994) (amended 1999, 2010, 2014), II (1994) (amended 1999) (emphasis added); see Seufert, 141 N.H. at 767-77. It was in the context of the 1994 version of the statute that we concluded that "the defendant's acts against the [plaintiff's] son cannot, in and of themselves, constitute 'abuse' under the domestic violence statute" and that "[t]he defendant's abuse of the plaintiff's son cannot substitute for the abuse required by the statutory scheme." Seufert, 141 N.H. at 767, 768.

To the extent that the defendant contends that "the specific conduct of pointing a firearm in the direction of [the plaintiff's aunt] could not be found to have constituted a threat to the safety of [the plaintiff]" because the plaintiff "was not even present in the residence, let alone in any type of danger to her safety" when the incident occurred, we disagree. The relevant inquiry was not whether the plaintiff was in danger at the exact moment the defendant pointed a gun at her aunt's face. Rather, the proper inquiry was whether the defendant's criminal conduct during the August 2020 and Thanksgiving 2019 incidents constituted a credible, present threat to the plaintiff's safety. See RSA 173-B:1, I (allowing the court to consider evidence of a defendant's criminal acts "regardless of their proximity in time to the filing of the petition, which, in combination with recent conduct, reflects an ongoing pattern of behavior which reasonably causes or has caused the [plaintiff] to fear for his or her safety or well-being").

The defendant next argues that the trial court unsustainably exercised its discretion by issuing protective orders that were broader than necessary to cause the abuse to cease. See RSA 173-B:5, I ("Upon a showing of abuse of the plaintiff by a preponderance of the evidence, the court shall grant such relief as is necessary to bring about the cessation of abuse."). According to the defendant, to "bring about the cessation of the abuse," id., the only protective orders necessary would require him to relinquish his firearm, abstain from alcohol and, possibly, undergo treatment for alcoholism. He contends that requiring him to leave the parties' home and prohibiting him from contacting the plaintiff or from being within 300 feet of her are unnecessary and that the

trial court unsustainably exercised its discretion by issuing protective orders with these requirements and prohibitions.

We review the trial court's decision to grant relief under RSA 173-B:5 under our unsustainable exercise of discretion standard. See In the Matter of Martel & Martel, 157 N.H. 53, 63 (2008). This standard of review means that we review only whether the record establishes an objective basis for the trial court's discretionary judgments. See Osman v. Lin, 169 N.H. 329, 336 (2016). Under our unsustainable exercise of discretion standard, "[o]ur task is not to determine whether we would have found differently, but only to determine whether a reasonable person could have reached the same decision as the trial court on the basis of the evidence before it." Id. (quotations omitted). Based upon our review of the record, we conclude that a reasonable person could have reached the same result as the trial court. See id. at 336-39.

Affirmed.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.