NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

7th Circuit Court-Dover Family Division
No. 2021-0194

S.C.

v.

G.C.

Argued: February 10, 2022
Opinion Issued: May 11, 2022

Wiberg Law Office, PLLC, of Portsmouth (Sven D. Wiberg on the brief and orally), for the plaintiff.

Hanlon & Zubkus, of Rochester (Mark D. Hanlon on the brief and orally), for the defendant.

BASSETT, J. The plaintiff, S.C., appeals an order of the Circuit Court (Foley, R., approved by Gardner, J.) denying her request for a domestic violence protective order against the defendant, G.C. See RSA 173-B:5 (Supp. 2021). The trial court concluded that the plaintiff did not meet her burden of proving a credible present threat to her safety based upon her admitted presence in the defendant's home during the timeframe of the alleged abuse. See RSA 173-B:5, I; see also RSA 173-B:1, I (Supp. 2021). On appeal, the plaintiff argues that the court erred as a matter of law when it relied on her in-person contact with the defendant as the sole basis for its decision. She also contends that the

court erred when it made certain evidentiary, trial management, and other rulings that deprived her of a fair hearing and violated her due process rights. We agree that it was legal error for the court to rely solely on the plaintiff's contact with the defendant in denying her petition, and we therefore vacate and remand.

The following facts are undisputed unless otherwise noted. The parties are former spouses who have one minor child. In late June 2019, when the parties were married and residing together, an altercation occurred. The defendant was charged with several domestic-violence-related crimes arising from that incident. In September 2019, he pleaded guilty to one domestic-violence-related criminal threatening charge and admitted to the conduct underlying one charge of domestic violence simple assault in order to enter a diversion program on that charge.

On May 8, 2020, the parties were living together and another altercation occurred. The parties would later recount different versions of the altercation, each accusing the other of instigating the conflict. In early July 2020, the plaintiff informed the defendant that she wanted a divorce, and, on July 10, she filed a domestic violence petition against him. At some point between July and December, the plaintiff moved out of the home and filed a divorce petition.

There is no evidence in the record that, as of early December, a final hearing on the July 10 petition had been scheduled. On December 8, using the docket number for the July 10 petition, the plaintiff filed a motion for ex parte emergency relief, which requested, among other things, that the defendant be prohibited from having contact with her and the parties' child. The court denied the motion and set the matter for a hearing.

On December 18, following a hearing on the plaintiff's request for ex parte relief, the court entered a consolidated order in both the divorce and domestic violence dockets regarding custody and visitation of the parties' child. The order provided that the parties have joint decision-making responsibility and joint physical custody of the child and that the plaintiff pay child support to the defendant. The court also entered a civil restraining order, enjoining the defendant from having any contact or communication with the plaintiff "with the exception of polite electronic communication, which is child focused." See RSA 461-A:10, I (2018) (authorizing entry of restraining orders after the filing of a petition regarding parental rights and responsibilities). The court did not, however, schedule a final hearing on the July 10 petition. See RSA 173-B:3, VII (2014) ("The court shall hold a hearing within 30 days of the filing of a petition under this section . . . ."). Following the December 18, 2020 civil restraining order, the parties had contact by phone, text, and in person over the next several months, including in-person contact over the Christmas holiday — some of which was not child-related.

On February 25, 2021, the plaintiff filed the domestic violence petition that is the subject of this appeal. In the petition, the plaintiff recounted the events that occurred in June 2019 and May 2020. She alleged that, notwithstanding the defendant's domestic-violence-related conviction, the plaintiff's July 10, 2020 domestic violence petition, and the December 18, 2020 civil restraining order that remained in effect, the defendant continued to "abuse, manipulate and threaten" her. That same day, the trial court scheduled a hearing on the February 25 petition.

On March 15 and April 6, 2021, the court conducted an evidentiary hearing at which both parties testified and offered exhibits. The court heard evidence regarding the defendant's 2019 domestic-violence-related conviction, the May 8, 2020 incident, and testimony from both parties regarding the extent of their in-person contact and communication since the December 18, 2020 civil restraining order. The defendant testified that the plaintiff spent time at his house with him and the parties' child on multiple occasions in late 2020 and early 2021, including Thanksgiving day, a three-night visit over the Christmas holiday, and multiple occasions in January and February. The plaintiff testified that she was at the defendant's home for part of the day on Thanksgiving and Christmas, but denied staying overnight. She explained that she visited the defendant's home over the holidays so that she could spend time with her child, and that she was present in the home on other occasions when the defendant was not there in order to pick up or drop off the child.

After the first day of the hearing, the plaintiff filed a motion to consolidate the July 10, 2020 and February 25, 2021 petitions together with a motion to amend both petitions to add allegations contained in an attached affidavit. On April 6, the second day of the hearing, the court orally denied both motions because the parties were already "halfway through the hearing."

On April 7, the trial court denied the plaintiff's request for a domestic violence protective order. The narrative portion of the court's order states in its entirety:

> Plaintiff failed to establish a credible fear to her safety, based upon her acknowledged presence in Defendant's home in the midst of her allegations, on numerous occasions.

The plaintiff filed a motion to reconsider, which the court granted in part: It reconsidered its denial of the plaintiff's motion to amend, permitted her to amend the July 10, 2020 petition, and ordered that a final hearing be scheduled on that petition. The court otherwise denied the motion. This appeal followed. As of February 10, 2022, the date of oral argument in this court, a final hearing on the amended July 10, 2020 petition had not been held and was not then scheduled.

3

On appeal, the plaintiff raises a sufficiency of the evidence challenge to the trial court's determination that she failed to establish a credible present threat to her safety as required by RSA 173-B:5, I.[1]  She argues that the court erred as a matter of law when it reached that conclusion based solely on her presence in the defendant's home during the time period when she alleges that she was being abused by the defendant.  The defendant counters that there was sufficient evidence in the record to support the trial court's decision and contends that, in light of the fact that the plaintiff "frequently and voluntarily went to [the defendant's] house alone," her behavior "was not that of a person who was fearful."  We agree with the plaintiff.

In an appeal from an order on a domestic violence petition, the trial court's "findings of facts shall be final," and we undertake de novo review of "questions of law."  RSA 173-B:3, VI (2014).  We review sufficiency of the evidence claims as a matter of law, upholding the findings and rulings of the trial court unless they are lacking in evidentiary support or tainted by error of law.  Achille v. Achille, 167 N.H. 706, 715 (2015); see RSA 173-B:3, VI.[2]  When performing this review, we accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony.  Achille, 167 N.H. at 715-16.  We view the evidence in the light most favorable to the prevailing party — here, the defendant.  See id.

To obtain relief under RSA chapter 173-B, a plaintiff must show "abuse" by a preponderance of the evidence.  Id. at 716; RSA 173-B:5, I.  "Abuse" has two elements: (1) commission or attempted commission of one or more of the enumerated criminal acts by a family or household member or a current or former sexual or intimate partner; and (2) a finding that such misconduct "constitute[s] a credible present threat to the [plaintiff's] safety."  RSA 173-B:1, I; see Achille, 167 N.H. at 716.  The statute further provides that the court may consider evidence of the enumerated criminal acts "regardless of their proximity in time to the filing of the petition, which, in combination with recent

---

[1] The defendant argues that the plaintiff waived this argument because her brief does not comply with Supreme Court Rule 7(6)(B).  That rule is inapposite; it sets forth the requirements for notices of appeal in non-mandatory appeals.  See Sup. Ct. R. 7(6)(B).  Nevertheless, we have reviewed the plaintiff's summary of her sufficiency claim contained in her notice of appeal and conclude that it provides sufficient notice of the basis for her challenge to the sufficiency of the evidence.

[2] By its plain language, RSA 173-B:3, VI provides for limited review, including a highly deferential standard of review as to factual findings, on appeal. See Magee v. Cooper, 174 N.H. 647, 650 (2021) (discussing similar standard of review language in RSA 540-A:4, V (2021)). Because the parties have not argued that there are substantive differences between the standard of review set forth in RSA 173-B:3, VI and Achille, nor requested that we overrule Achille or the cases on which it relies, we will apply the standard of review that we applied in Achille.  See id.

4

conduct, reflects an ongoing pattern of behavior which reasonably causes or has caused the [plaintiff] to fear for his or her safety or well-being." RSA 173-B:1, I.[3]

As to the first element of "abuse," it is undisputed that, in September 2019, the defendant pleaded guilty to one of the criminal acts that may support a finding of abuse: criminal threatening arising out of the incident in June of 2019. See RSA 173-B:1, I(b); see also RSA 173-B:5, III ("[T]he court shall not deny the plaintiff protective orders based solely on a lapse of time between an act of domestic violence and the filing of a petition, provided that the underlying act presents a credible threat to the plaintiff's current safety."). However, the trial court's order addressed only the second element of "abuse" — whether the defendant's misconduct constituted a credible present threat to the plaintiff's safety. It concluded that the plaintiff had failed to establish that element because she admitted she had been at the defendant's home on multiple occasions during the relevant time. The trial court's reliance on the plaintiff's repeated presence in the defendant's home as the sole basis for its decision regarding the "credible present threat" element was legal error.

This is not the first time that we have recognized the reality that it is not uncommon for survivors of domestic violence to have continuing contact with their abusers, despite the fact that the abusive individual continues to pose a credible present threat to the survivor's safety. In Achille v. Achille, 167 N.H. 706 (2015), we upheld the trial court's issuance of a domestic violence protective order and rejected the defendant's argument that, because the plaintiff had in-person contact with the defendant in the days following the assault underlying the domestic violence petition, there was insufficient evidence of "abuse." Achille, 167 N.H. at 715-17. Similarly, in Walker v. Walker, 158 N.H. 602 (2009), we upheld the trial court's finding of abuse, notwithstanding the fact that the parties continued to stay together on weekends following the defendant's threats to the plaintiff's life. Walker, 158 N.H. at 603-04, 607-09.

The legislature, too, appreciated this dynamic when it crafted RSA chapter 173-B. It provided that a victim's continuing contact or reconciliation with an abuser does not vitiate a protective order or preclude a finding of a credible present threat to safety. RSA 173-B:5, VIII(c) makes clear that, if a

---

[3] We note that RSA 173-B:1, I, was amended in 2010. Laws 2010, 289:1 (amending RSA 173-B:1, I, effective January 1, 2011). Neither party to this appeal has argued that the 2010 amendment resulted in a change to the statute that is relevant to the issues on appeal. Nor do we think the amendment bears upon our holding in this case: that it is error, as a matter of law, for a trial court to rely solely on continued contact between a plaintiff and the alleged abuser as the basis for finding no credible present threat to the plaintiff's safety. As a result, we have no reason here to interpret the amended statutory language or to address the effect of the 2010 amendment on the viability or precedential value of our pre-amendment case law.

domestic violence protective order prohibits a defendant from contacting the plaintiff, that no-contact order remains intact "even if [the defendant is] invited by the plaintiff" to have contact. Further, RSA 173-B:5, III provides that "[r]econciliation after a previous order, prior to filing the current action, shall not be grounds for denying or terminating a new or existing protective order." RSA 173-B:5, III; see also RSA 173-B:5, VIII(a) (providing that a protective order shall not be revoked due to "[t]emporary reconciliations").

We and the legislature are not alone in recognizing that the fact that a survivor returns to an abuser does not, on its own, demonstrate that she or he is no longer in danger. Other courts and commentators have acknowledged the often counterintuitive complexities of domestic violence relationships, including the tendency of victims to stay with or return to their abusers. See, e.g., Com. v. Gordon, 29 N.E.3d 856, 867-68 n.13 (Mass. App. Ct. 2015) (observing that victims typically "leave and then return to the batterer many times before finally ending the relationship" (quotation omitted)); Emily C. Jeske, Punishing Victims for Being Victims: Aiding and Abetting Violations of Protective Orders, 7 Wake Forest J.L. & Pol'y 275, 292 (2017) (noting the "complexity of [domestic violence] relationships" and observing that "[i]gnoring the legitimate reasons why a victim may voluntarily contact her abuser exacerbates the misunderstandings of abusive relationships"). Indeed, there are a multitude of reasons why a victim may return to, or continue contact with, an abusive person, including continued involvement with that person due to shared custody of their child. See, e.g., Commonwealth v. Wilson, 227 A.3d 928, 940 (Pa. Super. Ct. 2020) ("It is not uncommon for victims of intimate partner violence to remain with or return to their abusers for a myriad of complicated reasons, such as . . . fear of escalating violence or losing their children . . . ."); Battered Women and Child Custody Decisionmaking, 106 Harv. L. Rev. 1597, 1611 (1993) (observing that joint custody makes it difficult for the survivor to avoid the abuser and "enables the batterer to continue [the] abuse").

Taking into account our case law, the language of RSA 173-B:5, and the overall statutory scheme, we hold that, standing alone, a plaintiff's in-person contact with the defendant during the timeframe of the alleged abuse is an insufficient basis for the court to conclude that the plaintiff has not carried the burden of proving a credible present threat to the plaintiff's safety. Any other outcome would, in effect, punish victims for being victims — for remaining in the cycle of abuse and maintaining contact with an alleged abuser in order to minimize the risk of violence against the victim or a child of the relationship. Because the sole basis for the trial court's decision to deny the plaintiff relief was her presence at the defendant's home during the same time period as some of the alleged abusive acts, we conclude that the court committed legal error. See Achille, 167 N.H. at 715-16.

The defendant counters that the trial court's conclusion was not premised entirely on the plaintiff's presence in the defendant's home and is

supported by other substantial evidence in the record. We disagree. The court stated a single basis for its decision, which we have deemed erroneous. Although we ordinarily "assume that the trial court made subsidiary findings necessary to support its general ruling," In the Matter of Aube & Aube, 158 N.H. 459, 466 (2009) (quotation omitted), we cannot make such an assumption in cases when the record includes erroneous factual findings or errors of law that "render [the court's order] improper," Davis v. American Plastics., 108 N.H. 454, 455 (1968); see also In re C.C., 174 N.H. ___, ___ (decided Jan. 25, 2022) (slip op. at 4) (vacating trial court's ruling that evidence was insufficient to prove child was neglected where the trial court misconstrued the statutory definition of neglect). Because the only articulated basis for the court's decision was erroneous, we cannot conclude that this error did not taint the trial court's reasoning or that the court would have reached the same conclusion absent this error. See Stowell v. Andrews, 171 N.H. 289, 304 (2018) (vacating trial court's ruling "[b]ecause we [could not] determine whether the trial court would have reached the same decision" absent its error).

Finally, as of the date of oral argument, no final hearing on the amended July 10, 2020 petition had occurred, or was then scheduled. Although there is some evidence in the record that the parties initially agreed to postpone the hearing due to criminal charges filed against the plaintiff, those charges have long since been dropped, and there is no other evidence in the record that explains the ongoing delay. Given that we are vacating the trial court's ruling and remanding this case for further proceedings, the defendant will have time to respond to the amended July 10, 2020 petition and the February 25, 2021 petition before rehearing, and, therefore, there is no reason not to consolidate the matters. See RSA 173-B:3, I (2014) (providing that a plaintiff may amend or supplement a petition if the defendant is provided an opportunity to respond prior to the hearing).

We instruct the trial court to consolidate the amended July 10, 2020 petition with the February 25, 2021 petition and to promptly hold a final hearing resolving both matters. See RSA 173-B:3, VII(a). We stress that the statutory requirement that the court hold a hearing within thirty days of the filing of the petition, which is set forth in RSA 173-B:3, VII, is for the benefit of both parties. See Achille, 167 N.H. at 715 (rejecting the defendant's argument that the thirty-day time period in RSA 173-B:3, VII protected his interests alone). The thirty-day time period is necessary both to protect the due process rights of the defendant, McCarthy v. Wheeler, 152 N.H. 643, 646 (2005), and to advance the important purpose of the statutory scheme — "to preserve and protect the safety of the family unit for all family or household members by entitling victims of domestic violence to immediate and effective police protection and judicial relief," In the Matter of Morrill and Morrill, 147 N.H. 116, 117 (2001) (quotation omitted; emphasis added).

7

In sum, we conclude that the court erred, as a matter of law, when it based its finding of no credible present threat to the plaintiff's safety solely on the plaintiff's in-person contact with the defendant during the alleged abuse. Given that our resolution of this issue is dispositive, we need not address the plaintiff's due process argument. See Antosz v. Allain, 163 N.H. 298, 302 (2012) (declining to address party's other argument where holding on one issue was dispositive).

Vacated and remanded.


MACDONALD, C.J., and HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.