# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2025-0017, <u>L.B. v. P.I.</u>, the court on August 12, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(3). The defendant, P.I., appeals an order of the Circuit Court (<u>Collins</u>, J.), issued following a hearing, granting a domestic violence final order of protection in favor of the plaintiff, L.B. <u>See</u> RSA 173-B:5 (2022). We affirm.

"In an appeal from an order on a domestic violence petition, the trial court's 'findings of fact shall be final,' and we undertake <u>de</u> <u>novo</u> review of 'questions of law.'" <u>S.C. v. G.C.</u>, 175 N.H. 158, 162 (2022) (quoting RSA 173-B:3, VI); <u>see</u> RSA 173-B:3, VI (2022). "We review sufficiency of the evidence claims as a matter of law, and uphold the findings and rulings of the trial court unless they are lacking in evidentiary support or tainted by error of law." <u>Achille v. Achille</u>, 167 N.H. 706, 715 (2015). "When performing this review, we accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony." <u>Id.</u> at 715-16 (quotation omitted). We view the evidence in the light most favorable to the prevailing party — here, the plaintiff. <u>S.C.</u>, 175 N.H. at 163.

For a court to grant a domestic violence final order of protection, the plaintiff must establish, by a preponderance of evidence, that the defendant engaged in "abuse." <u>Achille</u>, 167 N.H. at 716; RSA 173-B:5, I. "'Abuse' has two elements: (1) commission or attempted commission of one or more of the . . . criminal acts [enumerated in RSA 173-B:1, I(a) through (h)] by a family or household member or a current or former sexual or intimate partner; and (2) a finding that such misconduct 'constitute[s] a credible present threat to the [plaintiff's] safety.'" <u>S.C.</u>, 175 N.H. at 163 (quoting RSA 173-B:1, I); <u>see</u> RSA 173-B:1, I (2022). The statute further provides that the court may consider evidence of the enumerated criminal acts "regardless of their proximity in time to the filing of the petition, which, in combination with recent conduct, reflects an ongoing pattern of behavior which reasonably causes or has caused the [plaintiff] to fear for his or her safety or well-being." RSA 173-B:1, I.

The trial court found that the defendant committed two of the crimes enumerated in RSA 173-B:1, I: "[a]ssault or reckless conduct as defined in RSA 631:1 through RSA 631:3", and "[i]nterference with freedom as defined in RSA 633:1 through RSA 633:3-a." RSA 173-B:1, I(a), (d). Specifically, the trial

court found that the defendant committed simple assault, see RSA 631:2-a (2016), and stalking, see RSA 633:3-a (Supp. 2024).

The defendant argues that the facts and testimony do not support a finding of assault. We disagree. RSA 631:2-a provides that an individual is guilty of simple assault if he "[p]urposely or knowingly causes bodily injury or unprivileged physical contact to another." RSA 631:2-a. We have defined unprivileged physical contact as all physical contact not justified by law or consent. State v. Woodbury, 172 N.H. 358, 368 (2019). In ruling that the defendant committed assault, the trial court found that the defendant "slipped his hand up the [p]laintiff's skirt at a child exchange."

At the hearing, the plaintiff testified that the defendant made sexual comments towards her and "slid his hand up [her] skirt" at a parenting exchange in July 2024. She testified that the incident was "offensive" and that she now does parenting exchanges at the police station because she does not "want [the defendant] touching [her] or even speaking to [her]." Although the defendant testified that he did not put his hand up the plaintiff's skirt, "we accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony." Achille, 167 N.H. at 715-16 (quotation omitted). Accordingly, we cannot conclude that the trial court erred in finding that the defendant committed simple assault against the plaintiff.

We next address the defendant's argument that there was insufficient evidence to support a finding that the defendant posed a credible threat to the plaintiff's safety. To support a finding that a credible threat to safety exists, the plaintiff "must show more than a generalized fear for personal safety based upon past physical violence and more recent non-violent harassment." Id. at 716 (quotation omitted).

At the hearing, the plaintiff testified that when the parties lived together, the defendant "would threaten to have [her] leave the house," "threaten[] [her] children," "threaten to call the police," and "punched a hole in the wall when he was angry." The plaintiff testified to an incident in 2022 in which the defendant was having an anxiety attack and he "came at [her]" and put his hands on her neck. Although the plaintiff testified that in the moment, she was not afraid of the defendant, and told him such, she testified that in looking back at that incident, "he's obviously capable and willing to harm [her]."[1] The plaintiff testified that following the incident of simple assault in July 2024, she now goes to the police station for parenting exchanges because of "the level of harassment and constant email[s] . . . and [she does not] want [the defendant] touching [her] or even speaking to [her]," and going to the police station is "the

---

[1] Because of the plaintiff's retrospective testimony about the incident, we disagree with the defendant that the plaintiff's testimony about her lack of fear during the incident supports that there was no credible threat to the plaintiff's safety.

only thing that has stopped him from doing those things." The plaintiff testified that about a week before she filed the domestic violence petition, the parties met for a parenting exchange and the defendant "came at [her] because he was angry and had been emailing [her] that he was angry earlier in the day." She stated that he was "walking aggressively at [her]," and that "[i]t was scary because it's just never ending." She testified that she "feel[s] like [her] nervous system is just constantly on the fritz."

Based upon our review of the record, we conclude that there was sufficient evidence for the trial court to find that the plaintiff "show[ed] more than a generalized fear for personal safety." Achille, 167 N.H. at 716 (quotation omitted). Accordingly, we cannot conclude that the trial court erred in determining that the defendant represented a credible present threat to the plaintiff's safety.

We thus determine that the trial court did not err in finding that the defendant engaged in "abuse" as defined by RSA 173-B:1, I. See id. Because a finding of abuse requires the trial court to find only that the defendant committed, or attempted to commit, one of the acts enumerated in RSA 173-B:1, I, we need not address the defendant's arguments as to the trial court's finding of stalking. See RSA 173-B:1, I.

The defendant next argues that the trial court erred by relying upon allegations that were not stated in the petition. Specifically, he contends that the allegations that the defendant drove by the plaintiff's place of employment and that he drove by honking the horn and "burning out" the tires were absent from the plaintiff's petition. Assuming, without deciding, that the defendant is correct and the trial court erred, we conclude that the error is not reversible. Rather, we agree with the plaintiff that the defendant was not prejudiced by the trial court's consideration of this allegation.

Finally, the defendant argues that the trial court erred in amending the parties' parenting plan because its order was not in the best interest of the child. We conclude that this argument is moot. "In general, a matter is moot when it no longer presents a justiciable controversy because the issues involved have become academic or dead." In the Matter of Routhier & Routhier, 175 N.H. 6, 19 (2022). Here, after the defendant appealed the trial court order, the parties participated in a temporary hearing in their parenting case and received temporary parenting orders. Thus, whether the parenting plan in the domestic violence final order of protection was in the best interest of the child is not a justiciable controversy, as that order no longer governs the parties' parenting responsibilities. See id. Further, we are not persuaded by

3

the defendant's argument that because the current parenting plan refers to the parenting plan in the domestic violence order, the issue is thus justiciable.

<u>Affirmed</u>.

MACDONALD, C.J., and DONOVAN and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,
Clerk**