# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2023-0193, <u>E.K. v. M.M.</u>, the court on December 28, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See Sup. Ct. R.</u> 20(2). The defendant, M.M., appeals the order of the Circuit Court (<u>Derby</u>, J.), issued after a hearing, granting a domestic violence final order of protection to the plaintiff, E.K., the defendant's son, who was in high school. <u>See</u> RSA 173-B:5 (2022). The defendant argues that the evidence was insufficient to support the court's order. We affirm.

To obtain a domestic violence final order of protection, the plaintiff must establish, by a preponderance of the evidence, that the defendant engaged in "abuse." RSA 173-B:5, I. "Abuse" is defined in RSA 173-B:1 and includes the commission or attempted commission of one or more acts enumerated therein by a family or household member when "such conduct is determined to constitute a credible present threat" to the plaintiff's safety. RSA 173-B:1, I (2022). The trial court "may consider evidence of such acts, regardless of their proximity in time to the filing of the petition, which, in combination with recent conduct, reflects an ongoing pattern of behavior." <u>Id</u>. The trial court found that the defendant committed the offense of stalking, one of the enumerated acts, <u>see</u> RSA 173-B:1, I(d); RSA 633:3-a, I(b) (2016), and that the defendant's conduct constituted a credible present threat to the plaintiff's safety.

The trial court's "findings of facts shall be final, but questions of law may be transferred from the circuit court to the supreme court." RSA 173-B:3, VI (2022). We review sufficiency of the evidence claims as a matter of law, upholding the trial court's findings and rulings unless they lack evidentiary support or are tainted by legal error. <u>S.C. v. G.C.</u>, 175 N.H. 158, 162 (2022). We view the evidence in the light most favorable to the prevailing party, here, the plaintiff. <u>Id</u>. at 163. We accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony. <u>Id</u>. at 162-63.

The trial court found credible the plaintiff's testimony and did "not find defendant's testimony on the relevant facts to be credible." The court also found that the plaintiff had not seen the defendant for many years, when, in violation of a court order, she approached him in September 2022, on the grounds of or in the immediate vicinity of his school. During this interaction, the defendant "order[ed]" the plaintiff to kiss her and grabbed at his hand

several times. She also "identified [to the plaintiff] at least one other place she had been, strongly implying that she had been looking for the plaintiff." The court found that the September interaction "was apparently a sudden, if not erratic, and unexpected change in the defendant's compliance with the [court order]." The trial court found that the plaintiff "testified credibly that the defendant's conduct places him in fear for his safety."

The plaintiff was a minor at the time of the September encounter. When he turned 18 two months later, he sent the defendant an email saying that he wanted "zero contact [with her] . . . in person, phone, social media and e-mail." Notwithstanding this message, the defendant sent the plaintiff an email approximately a week later. And, several days after her email to him, the defendant sent the plaintiff a care package; the trial court found that its "labeling and contents were unusual."

After considering all of the evidence presented during the two-day hearing, the trial court concluded that the plaintiff met his burden to establish that the defendant had stalked him. The court's findings included that the defendant had purposely or knowingly violated an existing court order by approaching and interacting with the plaintiff. Citing the defendant's erratic and escalating conduct, the trial court ruled that the "defendant can be considered a present credible threat to the plaintiff's safety."

The defendant filed a motion to reconsider. The trial court ruled on the motion in a narrative order, granting it in part but denying it as to the court's ultimate ruling.

On appeal, the defendant first argues that the trial court erred by considering the September 2022 encounter to support its findings of stalking and credible present threat to safety because, in the post-divorce proceeding, the circuit court did not find her in contempt based on the same conduct. She asserts that, under the doctrine of res judicata, the finding of no contempt in the circuit court barred the trial court in this case from finding the intent necessary to establish stalking. She further argues that res judicata applies because at the time of the ruling on the motion for contempt, the plaintiff was a minor and in privity with his father in the post-divorce case.

Whether res judicata applies to bar litigation in a case presents a question of law that we review de novo. Meier v. Town of Littleton, 154 N.H. 340, 342 (2006). "Res judicata precludes the litigation in a later case of matters actually decided, and matters that could have been litigated, in an earlier action between the same parties for the same cause of action." Id. The doctrine will apply if the following three elements are met: (1) the parties must be the same or in privity with one another; (2) the same cause of action must

2

be before the court in both instances; and (3) a final judgment on the merits must have been rendered in the earlier case.  Id.

We briefly address the post-divorce proceedings that took place after the September 2022 interaction.  Two days after the event, the plaintiff's father filed a "motion for immediate orders & contempt."  Following a hearing, the trial court found that the defendant had violated court orders that prohibited her from having any in-person contact with the plaintiff, but declined to find her in contempt given her "history of complying with the Court's orders regarding contact with her children."

We conclude that the plaintiff's petition for a domestic violence protective order does not present the same cause of action as his father's motion for contempt in the post-divorce proceeding.  The term "cause of action" is defined as the right to recover regardless of the theory of recovery.  Merriam Farm, Inc. v. Town of Surry, 168 N.H. 197, 199 (2015).  Generally, in determining whether two actions are the same cause of action for the purpose of applying res judicata, we consider whether the alleged causes of action arise out of the same factual transaction or occurrence.  See id. at 199-200.  Here, the contempt proceeding arose solely out of the September incident, whereas the plaintiff's petition was premised on not only the September encounter, but also the defendant's subsequent course of conduct — emailing and sending a package to the plaintiff.  See RSA 173-B:1, I (when making an "abuse" finding, court may consider acts "which, in combination with recent conduct, reflect[] an ongoing pattern of behavior"); RSA 633:3-a, I(b), II(a) (2016) (defining "stalking" in part as a "course of conduct," which means two or more acts committed over a period of time).  Accordingly, we conclude that res judicata did not bar the plaintiff from seeking a protective order against the defendant in this case.

Nor does the defendant prevail in her argument that the trial court erred by not concluding that the plaintiff's petition was barred by collateral estoppel.  See Farm Family Mut. Ins. Co. v. Peck, 143 N.H. 603, 605 (1999) (outlining elements of collateral estoppel).  Collateral estoppel did not bar the plaintiff's petition because the issue was not "identical in each action."  Id.  The issue decided in the contempt proceeding was that the defendant had violated the post-divorce court's orders by approaching the plaintiff, but that, given her past conduct, her action did not amount to contempt.  Indeed, the post-divorce trial court specifically found that the defendant had "violated the Court's orders by approaching her children on/around their school grounds on September 12, 2022, and engaging them in a conversation."  In contrast, the issue raised by the plaintiff's petition was whether the defendant "[p]urposely or knowingly engage[d] in a course of conduct" targeted at the plaintiff which she knew would "place that individual in fear for his . . . personal safety."  RSA 633:3-a, I(b).

3

The defendant also contends that the trial court erred when it ruled that she stalked the plaintiff by sending him an email after he instructed her to cease contacting him and by later sending a package to him. A "[c]ourse of conduct" is defined as "2 or more acts over a period of time, however short, which evidences a continuity of purpose." RSA 633:3-a, II (2016). Although the defendant asserts that she did not receive the plaintiff's email in which he reported that he wanted no contact with her, the trial court found this testimony not credible.

Citing Knight v. Maher, 161 N.H. 742 (2011), the defendant next argues that the plaintiff failed to establish an ongoing, credible threat to his safety. See RSA 173-B:5, I (providing that finding of abuse "shall mean the defendant represents a credible threat to the safety of the plaintiff"); see also RSA 173-B:1, I (defining "abuse" as conduct that is determined "to constitute a credible present threat to the [plaintiff]'s safety"). We disagree. Although the trial court opined in its original order that it did "not believe . . . that the defendant would engage in physical violence toward the plaintiff," the court also observed in its subsequent order on reconsideration that the September "in-person confrontation had a physical component to it." The court again cited the defendant's statements that she had been looking for the plaintiff "at various locations around town and interacting with people the plaintiff knows." Finally, the court found credible the plaintiff's fear of the defendant's "aggressive" behavior, given its "prior findings that the defendant will likely not be able to comply with the plaintiff's request to be left alone, and the plaintiff's specific testimony about his condition after the confrontation," when he was "shocked and overwhelmed . . . scared and frightened." These findings are distinguishable from the factual scenario in Knight. See id. at 746.

Finally, the defendant contends that the trial court unsustainably exercised its discretion when, based upon its own observations, it commented upon the defendant's mental health. See L.C. v. W.C., 174 N.H. 355, 361 (2021) (describing unsustainable exercise of discretion standard of review). The trial court observed that the defendant's conduct in court "strongly suggest[s] that the defendant has ongoing, unresolved mental health experiences." The trial court explained that it based this observation on "the defendant's testimony, demeanor, affect and language" during her appearances before the court. The trial court's description of the defendant's conduct in court did not require an expert to corroborate it. The court was charged with judging the credibility of the witnesses appearing before it, including the defendant, and determining the weight to be given to their testimony. See S.C., 175 N.H. at 162-63. We find no error in the court's consideration of the defendant's conduct before the court in assessing her credibility.

Having reviewed the record before us, including the extensive testimony of both parties and the detailed findings by the trial court, we affirm the trial court's ruling that the plaintiff established by a preponderance of the evidence that the defendant committed the act of stalking and that the defendant's conduct constituted a credible, present threat to the plaintiff's safety.

Affirmed.

MACDONALD, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

5